CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

JUL 27 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| ANDREA DARLENE SMALLWOOD, | CASE NO. 5:11CV00104 |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | |
| Defendant. | By: B. Waugh Crigler<br>U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's December 28, 2008 protectively-filed application for a period of disability and disability insurance benefits under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416 and 423, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision dated May 26, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since March 29, 2008, her alleged date of disability onset.[12] (R. 36.) The Law Judge determined plaintiff's diabetes mellitus and

---

[1] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last

1

depression were severe impairments. (R. 36.) She also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 36-38.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a range of light work with several limitations.[3] (R. 38-40.)

The Law Judge relied on portions of the testimony of Kathleen F. Sampeck, a vocational expert ("VE"), which was in response to questions premised on the Law Judge's RFC finding. (R. 40-42, 88-97.) Based on this testimony, the Law Judge determined that plaintiff was unable to perform her past relevant work as a fast food worker, receptionist, data entry clerk, scheduler, or medical assistant. (R. 40-41.) However, she also found that a significant number of alternate jobs exist in the national economy which could be performed by a person with plaintiff's RFC. (R. 42.)

Plaintiff appealed the Law Judge's May 26, 2010 decision to the Appeals Council. (R. 17-22, 28.) In its August 22, 2011 decision, the Appeals Council found no basis to review the Law Judge's decision. (R. 17-18.) The Appeals Council denied review and adopted the Law

---

for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status, which is December 31, 2010. *See* 20 C.F.R. § 404.131(a); (R. 36, 254.)

[2] Plaintiff had been awarded a 100% disability rating from the Department of Veterans Affairs, though the rating was later revised to an 80% rating. (R. 1259-1265.) Plaintiff was previously found to not be disabled by the Commissioner on March 28, 2008. (R. 118-126.) For *res judicata* reasons, the undersigned shall not consider any documents in the record from before that date.

[3] Light work is defined in 20 C.F.R. § 404.1567(b) as involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category requires a good deal of walking or standing, or when it involves sitting most of the time, some pushing and pulling of arm or leg controls. The Law Judge included the additional limitations that plaintiff cannot perform tasks requiring repetitive use of her upper extremities other than for 10 minutes at a time for no more than one time per hour, and she is limited to simple unskilled work (no more than a specific vocational preparation rating of 2). (R. 38.)

2

Judge's decision as the final decision of the Commissioner. *Id.* This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." (*Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

Plaintiff seeks reversal on the following grounds: 1. The Law Judge erroneously assessed whether she met a medical listing; 2. The Law Judge failed to properly credit the evidence of her treating physician; 3. Appeals Council failed to consider the additional evidence plaintiff filed while on administrative appeal; 4. The Law Judge failed to properly credit plaintiff's testimony; and 5. The Law Judge did not include relevant limitations in her questions to the VE. (Dkt. No. 8, at 10, 13, 19, 23.) The undersigned will address those challenges below.

3

Plaintiff asserts that the Law Judge should have given controlling weight to the opinion of Susan Grayson, M.D, plaintiff's treating psychiatrist. Dr. Grayson opined that plaintiff had marked limitations in understanding and memory, sustained concentration and persistence, social interactions, and adaptation. (R. 768-775.) Plaintiff argues that had the Law Judge given the opinion appropriate weight, she would have found either that plaintiff met the requirements of Listing 12.04 (B), or that plaintiff did not possess the RFC necessary to perform substantial gainful activity.[4] (Dkt. No. 8, at 12-13.) Plaintiff bases her argument on the principle that the opinions of treating physicians should be given controlling weight, provided they are supported by medically acceptable clinical and laboratory diagnostic techniques and are consistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

In this case, the Law Judge considered Dr. Grayson's treatment notes throughout her sequential analysis of plaintiff's claim. (R. 36-40.) However, she found that Dr. Grayson's opinion was inconsistent with her assessment of plaintiff's functioning, the objective examination findings, and plaintiff's admitted daily activities. (R. 40.) Accordingly, the Law Judge found the opinion was only entitled to some weight, which was incorporated into the RFC. (R. 40.) This finding is supported by substantial evidence.

Plaintiff's Global Assessment of Functioning scores were in the high 50's throughout the relevant period of this case, indicating a moderate degree of impairment.[5,6] Dr. Grayson

---

[4] To meet Listing 12.04 (B), a claimant would need to show at least two of the following: 1. Marked restriction of activities of daily living; 2. Marked difficulties in maintaining social functioning; 3. Marked difficulties in maintaining concentration, persistence, or pace; and 4. Repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04 (B).

[5] The GAF is a numeric scale ranging from zero to one hundred used to rate social, occupational and psychological functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Association, Diagnostic and Statistical Manual of Mental

4

indicated that plaintiff's GAF score was 59, which the treatment notes show had improved from 57 to 59 during the period of March 6, 2008 through February 23, 2009. (R. 329, 768.) Furthermore, on June 15, 2009, Jayne R. Oertle, R.N., a nurse in Dr. Grayson's office, observed that plaintiff's GAF score was 59, which, if nothing else, demonstrates stability in plaintiff's mental status. (R. 680.) Though the GAF scale does not perfectly square with Social Security Listings,[7] it is evidence of a claimant's degree of functioning. In this case, plaintiff's scores suggest that she was not severely impaired.

Plaintiff's treatment notes also reveal that she was responding well to medication, and her level of functioning improved greatly through the treatment period. On May 2, 2008, plaintiff's energy and motivation had improved since taking Lamictal, with "fewer ups and downs." (R.311.) Though her anxiety was still present, she was found to be alert, oriented, in good spirits, of bright affect, friendly, cooperative, talkative, and coherent. (R. 311.) On May 5, 2008, plaintiff indicated that she was feeling less anxious and depressed since taking the medications prescribed by Dr. Grayson, though she was still in a dsyphoric mood with mildly depressed and anxious affect. (R. 310.) On August 13, 2008, Dr. Grayson noted that Lamictal had helped plaintiff quite a bit, and she found plaintiff of bright mood and affect, alert, oriented, friendly, talkative, and of normal grooming and dress. (R. 298.) On September 18, 2008, Nurse Oertle

---

Disorders, 32 (4th ed. 1994) (DSM–IV). A GAF of 51 to 60 indicates the individual has "[m]oderate symptoms ... or moderate difficulty in social, occupational, or school functioning...." DSM–IV at 32.

[6] Plaintiff points to *Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2008), arguing that the Eighth Circuit found that a GAF score of 58 was not inconsistent with mental disability. (Dkt. No. 8, at 15.) However, the court actually held that a single GAF score of 58 was not inconsistent with disability when the claimant had several other scores over the relevant period of the case which were not discussed by the Law Judge, including many that were in the 40's and lower. *Id.* at 944-945. In this case, plaintiff's GAF scores have consistently been in the high 50's.

[7] *See* 65 Fed. Reg. 50746, 50764-5 (2000) (the GAF scale does not have a direct correlation to the severity requirements in mental disorder listings).

noted that plaintiff had no side effects from her medications, and that, while plaintiff's mood was dsyphoric with depressed and anxious affect, she was appropriately dressed and groomed, spoke in a goal directed manner with organized thoughts, and expressed understanding and commitment to treatment. (R. 295.) An October 30, 2008 treatment note repeated these findings. (R. 290.) By February 23, 2009, the date Dr. Grayson offered her opinion on plaintiff's limitations, plaintiff indicated that she was feeling less angry and depressed, was improving greatly in her social interactions with her family, and, among other usual findings regarding her appearance and bearing, was noted to be in euthymic mood with congruent affect. (R. 708.) A primary care note from February 24 also showed that plaintiff's bipolar disorder was controlled. (R. 837.)

On June 15, 2009, plaintiff was again of euthymic mood with congruent affect and continued to make gradual progress. (R. 680.) On July 15, 2009, Dr. Grayson found that plaintiff was alert, oriented, of normal dress and grooming, euthymic, pleasant, cooperative, and coherent. (R. 799.) Plaintiff was found to be of dsyphoric mood on July 16 and August 20, 2009, but the final treatment notes from October through November 2009 all revealed that plaintiff was of euthymic mood, was improving in confidence and assertiveness, was feeling less anxious and depressed, was dressed and groomed normally, spoke in a goal directed manner, and had organized thoughts. (R. 1242, 1246-1250, 1254.) From all this, the undersigned concludes that there is substantial evidence supporting the Law Judge's finding that the treatment notes of record are inconsistent with Dr. Grayson's opinion that plaintiff was markedly limited in nearly all mental activities.

Plaintiff, herself, testified that "life seems a little better" since she began taking medication for her bipolar disorder, and that her condition had improved from when she stopped

6

working. (R. 70, 78-79.) She also indicated that, though she had bad days and good days, she was able to function on her bad days, though not at her preferred level. (R. 85.) The record also shows that plaintiff's daily activities during the relevant period suggest that she was not disabled. Plaintiff studied to become a missionary and graduated from RHEMA Bible College. (R. 298, 311.) She travelled to Romania and planned additional trips to Kenya and Nigeria, likely as part of her missionary work. (R. 298, 311.) She regularly travelled from Oklahoma to Virginia to visit family, as well as to other states. (R. 295, 297-298, 310-311, 680, 799, 1241-1242, 1247.) Plaintiff also indicated that she lives independently, shops daily for long periods, regularly attends church, manages her own finances, performs daily chores, regularly enjoys embroidering, exercises, and uses a computer. (R. 60-66, 228-235.) Together with plaintiff's medical records, this evidence provides substantial evidence in support of the Law Judge's determination that Dr. Grayson's opinion is inconsistent with the record and entitled to little weight.

Plaintiff is inaccurate in her assertion that the Law Judge failed to credit several episodes of decompensation in determining that plaintiff's impairments did not meet the requirements of Listing 12.04. Plaintiff points to several notes in the record indicating that her medications were altered or increased because of increased symptomatology and asserts that these are qualifying episodes of decompensation.[8] (Dkt. No. 8, at 13.) Yet, the record actually shows that the changes in medication were minor and intended to further plaintiff's improvement as opposed to a response to some significant downturn. There is no evidence that plaintiff was hospitalized

---

[8] Episodes of decompensation are defined as exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. They may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system; or other relevant information in the record about the existence, severity, and duration of the episode. Repeated episodes of decompensation, each of extended duration, means 3 episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(C)(4).

7

during the relevant period, or that she suffered significant or long lasting increases in her symptoms. Accordingly, the Law Judge's finding that there were no repeated episodes of decompensation of extended duration is supported by substantial evidence.

Plaintiff is correct in noting that the Appeals Council failed to consider the additional evidence plaintiff submitted while on appeal, specifically the opinion of Prakash G. Ettigi, M.D. However, the explanation for this appears on the face of the record. The reason is that this evidence was submitted on August 24, 2011, two days **after** the Appeals Council issued its decision denying review. (R. 1-2, 17-19.) The court can lay no fault at the feet of the Appeals Council for not considering evidence which was not before it at the time the final agency decision was issued.

Because this evidence has yet to be examined by any administrative fact finder, the undersigned will consider it as if it had been submitted for the first time on judicial review. In order for this evidence to provide a basis for remand, it must be new and material, the plaintiff must demonstrate good cause for not submitting the evidence earlier, and plaintiff must offer a general showing of the substance of the proffered evidence. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985), *partially superseded by statute on other grounds*, 42 U.S.C. § 405(g). Plaintiff has provided argument for why this evidence is new and material, and the record provides sufficient context for its relevance.[9] (Dkt. No. 8, at 19; R. 2, 9-16.) However, plaintiff has not presented any explanation, much less good cause, for having failed to submit the evidence to the Commissioner in a timely manner. The record is clear that Dr. Ettigi examined

---

[9] It is highly uncertain whether this additional evidence likely would have changed the Law Judge's decision. Dr. Ettigi's opinion supports Dr. Grayson's opinion, but it appears to have been based on a single examination, included no supporting treatment notes, and was offered more than a year after the Law Judge's decision. (R. 8-16.) Though it suggests that plaintiff's condition has remained the same over the last year and a half, there is insufficient evidence to relate the severity of plaintiff's condition to the relevant period.

8

plaintiff on July 20, 2011, and it appears that he faxed his opinion to plaintiff's counsel on August 10, 2011. (R. 8-9.) Thus, the evidence was available to submit for some two weeks before it was faxed to the Commissioner, which was after the Appeals Council had made its decision. (R. 1, 17.) Therefore the Commissioner was under no obligation to consider this evidence, and there is no basis for a remand to require him to do so.

Plaintiff also argues that the Law Judge's credibility determination is not supported by substantial evidence. She offers that the Law Judge failed to adequately consider plaintiff's testimony on her symptoms, limitations, daily activities, and response to treatment, and that the Law Judge's findings regarding her daily activities and mental status are neither supported by the record nor sufficient to discredit her testimony. (Dkt. No. 8, at 19-22.) There is substantial evidence in support of the Law Judge's credibility finding.

First, the Law Judge clearly considered plaintiff's subjective complaints, referencing her testimony, function report, and statements to her treating physicians throughout her opinion. (R. 37-41.) She further took into account plaintiff's medical records and daily activities, which the undersigned has addressed above. Also, plaintiff's testimony was inconsistent at times with other record evidence. She testified that her medications made her drowsy and made her tongue feel out of proportion in her mouth. (R. 79-80.) Though there was a history of side effects early in her treatment, the last mention of those appears on October 30, 2008, in treatment notes indicating that plaintiff was not suffering from any side effects as a result of her medications. (R. 290, 294-295, 311-315.) Ultimately, it was the Law Judge who was in the best position to consider evidence and give it the weight it deserved under the circumstances. Here, the finding that plaintiff was not entirely credible is supported by substantial evidence.

9

Plaintiff also points out that the Law Judge failed to include any mental restrictions in the hypothetical questions presented to the VE. Plaintiff offers that the restriction of simple unskilled work does not adequately describe plaintiff's limitations in mental functioning, including those indentified by the Law Judge at step 3 of the sequential analysis. At step 3, the Law Judge found that plaintiff suffered moderate difficulties in concentration, persistence, or pace and mild difficulties in the other categories of mental function. (R. 37.) At the fourth sequential step, and in her hypotheticals, the Law Judge limited plaintiff to simple, unskilled work. (R. 38, 92.)

Plaintiff relies on decisions from other circuits to assert error by the Law Judge in failing include these additional limitations in her hypotheticals. (Dkt. No. 8, at 23-24.) *citing Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir.2004); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir.2011) (finding error when the Law Judge did not include impairments from earlier steps in his hypotheticals). However, the Fourth Circuit has distinguished these cases from those where the Law Judge provides a valid explanation for the claimant's RFC. *Thompson v. Astrue*, No. 10–2277, 442 Fed.Appx. 804, at 806 (4th Cir. August 10, 2011). Here, the Law Judge gave plaintiff the benefit of the doubt in finding that she suffered moderate limitations in concentration, persistence, and pace, and mild limitations in social functioning and daily living, though she also found that these limitations did not substantially interfere with plaintiff's life. (R. 37.) The undersigned already has addressed the substantial evidentiary support for the Law Judge decision not to fully credit Dr. Grayson's opinion, which is the principal basis for the limitations plaintiff seeks to impose. In other words, the hypothetical questions based on the Law Judge's determination of plaintiff's residual functional capacity took into account all the

factors plaintiff believes compel reversal. For the same reasons, the undersigned concludes that the Law Judge's hypothetical questions were supported by substantial evidence.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, DENYING plaintiff's motion for summary judgment and motion to remand, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ _____
U.S. Magistrate Judge

7-27-2012
Date